**STICKER INDUSTRIAL SUPPLY CORPORATION, Plaintiff,**

v.

**BLAW–KNOX COMPANY and A. J. Boynton & Company, Defendants.**

**No. 65 C 500.**

United States District Court,
N. D. Illinois, E. D.

Oct. 12, 1970.

Altheimer, Gray, Naiburg, Strasburger & Lawton, Chicago, Ill., for plaintiff.

Jerome F. Fallon, Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., for Blaw-Knox Co.

Thomas D. Allen, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for A. J. Boynton & Co.

## MEMORANDUM

AUSTIN, District Judge.

It appears appropriate to review the patent history which resulted in the patent in suit, #3,155,497, for consideration of the defendants' motion for leave to file supplemental answer and counterclaim and to vacate a Judgment Order heretofore entered by this court on June 4, 1969.

The first or parent application covered an invention for both a method and apparatus procedure to feed solid material to molten metal; that application was filed December 10, 1953. A second application which also covered both method and apparatus claims was filed February 25, 1957. In the processing of this second application, the Examiner required a division between the method and apparatus claims. Complying therewith, the inventor retained the apparatus claims and a patent therefor issued, #2,872,180. The first application of December 10, 1953 was abandoned on December 2, 1957. On June 24, 1958, the inventor filed a third application for the method claims which had been removed from the second application, and patent #3,155,497 issued, which is the patent in suit. Said third application omitted cross-reference to the first or parent application of December 10, 1953, but did cross-reference to the second application which contained cross-reference to the first application.

Interlocutory appeal was granted on the question whether the method patent was entitled to the filing date of the first application, i.e. December 10, 1953, or was limited to the filing date of the second application, February 25, 1957, because of the failure to cross-reference specifically to the first application. Failure to establish a filing date of De-

cember 10, 1953 necessarily would render the patent invalid under § 102, 35 U.S.C. because of a conceded prior public use occurring in 1953 more than one year prior to the 1957 date. The Court of Appeals on December 19, 1968 held that the earliest filing date which could be claimed by the method patent was the date of the second patent application, i.e. February 25, 1957. 405 F.2d 90.

Judgment Order pursuant to the mandate was entered by this court on June 4, 1969 holding that the patent in suit was invalid and void by virtue of that prior public use in 1953 at the Lone Star Steel Company in Lone Star, Texas; that therefore no infringement was committed by plaintiff's use of the invention; and defendants were enjoined from asserting the validity of patent #3,155,497. An accounting was ordered.

Prior to the entry of this judgment, defendant on April 7, 1969 filed for a reissue patent, which is couched in verbatim language of patent #3,155,497, except for the addition of a cross-reference to the first application of December 10, 1953. The Reissue was granted by the Patent Office on January 6, 1970 as Reissue Patent 26,751.

Defendant's tendered supplemental answer and counterclaim recite the prior judicial proceedings, except for the Judgment Order of June 4, 1969; allege the issuance of the Reissue Patent and by the counterclaim charge the plaintiff with infringement thereof.

■ Preliminarily plaintiff objects because § 251, 35 U.S.C. covering reissue of defective patents does not encompass omission in cross-referencing, and also contends that "if an effective filing date is to be claimed, it must be claimed *before* the patent issues". Both of these contentions are without merit. In State of Israel v. Brenner, 273 F.Supp. 714 (D.C.Col.1967) aff'd 130 U.S.App.D.C. 318, 400 F.2d 789 (1968) the issue of correcting a patent to obtain the benefit of a prior filing date was considered. Although factually different, the basic question is the same as the one before this court. In that case, a certified copy of a foreign patent was essential and had to be filed in order for a domestic patent application to claim the benefit of the foreign patent's earlier date. § 119, 35 U.S.C. The certified copy was not filed, the patent issued, but subsequently a reissue patent application was filed and granted which supplied such certified copy, and thus claimed the benefit of the right of priority. Judge Holtzoff determined that the reissue section 251 not only comprised claims to invention, but also claims to priority. In the instant case, the reissue patent was filed for the same purpose—i.e. a right of priority by virtue of a parent application filed in 1953.

■ The reissue of a patent is an amendment or correction of the original patent and such reissue patent is to be judged on the basis of the prior art that existed at the time of the original application. Grant v. Raymond, 6 Pet. 218, 31 U.S. 218, 8 L.Ed. 376 (1882) expresses through Chief Justice Marshall that

> " * * * the new patent, and the proceedings on which it issues, have relation to the original transaction. The time of the privilege still runs from the date of the original patent. The application may be considered as appended to the original application."

See also Union Asbestos & Rubber Co. v. Paltier Corp., 298 F.2d 48 (C.A. 7, 1962). Therefore, the rights of a reissue patentee are the same as those which existed with respect to the prior art at the time of his original application. For, as Chief Justice Marshall stated in Grant v. Raymond, supra,

> "* * * If, by an innocent mistake, the instrument introduced to secure this privilege fails in its object, the public ought not to avail itself of this mistake, and to appropriate its discovery, without paying the stipulated consideration. The attempt would be disreputable in an individual and a court of equity might interfere to restrain him. * * *"

It is urged by plaintiff that the reissue patent, by recapturing prior art which had been held to be in the public domain, enlarges and broadens the scope of the reissue claims. For that reason also, it was not processed within the two year period required by § 251. It is not readily apparent how prior art can broaden the claims of a patent. More realistically, the reissue patent will deprive plaintiff of the defense of a specific incidence of prior public use more than one year before the patent issued. On the principle previously set forth, the beneficent purpose of § 251 was to restore a reissue patentee to the conditions which existed on the date of his original patent. This is not to say, however, that the effectiveness of that prior art is not available for testing the inventiveness of the claims.

Some reference is made by plaintiff to the fact that defendants made the error knowingly and not by mistake because of their insistence upon judicial determination of § 120, 35 U.S.C. The mistake of interpretation was made not only by defendants but also by this court until corrected by the Court of Appeals. Such conduct cannot be construed to deprive him of the purpose of § 251.

Plaintiff stresses that the conduct of defendants during the processing of the reissue patent in the Patent Office reaches the proportions of fraud and unclean hands which render the reissue patent invalid and void. The plaintiff is not foreclosed from raising such matter as an answer to the tendered counterclaim. Nevertheless some of the incidents to which plaintiff refers will be here considered.

It is asserted that the Reissue oath signed by the assignee of the patent and not the inventor is not in compliance with § 251 which requires that where the reissue application seeks to broaden the scope of the claims of the original patent, the inventor is required to make the oath. In the light of the court's determination that there was no broadening of the scope of the claims in this patent, that argument must fall. Also, it is urged that in the making of said oath, there should have been a disclosure that the patent had previously been held invalid and thus failed to disclose the reasons why the original patent was wholly or partly inoperative. The oath did indicate that such inoperativeness was because of an incomplete cross-referencing and no more was required under the Patent Office Rule 175.

In the processing of the reissue application, plaintiff contends that a copy of the Judgment Order of June 4, 1969 was not placed in the file of Patent #3,-155,497 at the time the Examiner made his study and therefore was not informed of the invalidity of the patent because of the prior public use in 1953. The record does show that it was filed and received by the Patent Office on June 19, 1969. The deposition of the Examiner establishes that the Court of Appeals opinion of December 19, 1968, 405 F.2d 90 and 160 U.S.P.Q. 177, was read by him in February, 1969 prior to the reissue application [Rutledge Dep. p. 18]. Further, plaintiff asserts that the defendants failed to disclose other prior art in the processing of this reissue which had been revealed during the pendency of this suit. Consequently, the Examiner, who is required to conduct the examination of a reissue in the same manner as the original, had the right to be apprised of such prior art in order to comply with his duty and obligation. Defendants' actions prevented him from so doing. The viability of such prior art has not been lost to the plaintiff and the pendency of this suit was a part of the official Patent Office record. Because the reissue patent relates back to the date of the original application, and that is its purpose, the court is of the opinion that defendants were not required to cite the prior art which plaintiff has raised to defeat the patent, but the contention may be alleged in any answer plaintiff files to answer the counterclaim.

From the documents presently before the court, the court finds that there was no fraud or unclean hands practiced by the defendants in the processing of the reissue application.

It is urged by plaintiff that the Judgment Order of June 4, 1969 is res judicata and a final judgment which should not be vacated. The record in this court does not establish that the case has been terminated by a final disposition and closing of the case albeit that a determination of invalidity has been made. Section 252, 35 U.S.C. provides

"* * * but insofar as the claims of the original and reissue patents are identical, such surrender shall not affect any action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent."

As plaintiff contends this reissue recaptures what was conceded by defendants during the interlocutory appeal to be in the public domain in 1953 if the patent had a filing date of 1957. Plaintiff asserts that therefore his established rights to make the apparatus have been nullified by the reissue and destroys the interest established by the 1969 Judgment Order. The matter of intervening right, if any, may be relevant in the final adjudication of the equities. Southern Saw Serv. v. Pittsburg Erie Saw Corp., 239 F.2d 339, (C.A. 5, 1956). Plaintiff also urges that because the claims of the original and reissue patent are identical, the same evidence would be required to sustain both the 1969 Judgment Order and any order entered on the reissue. But the claims of patent # 3,155,497 were not adjudicated by that Judgment Order because no evidence was heard regarding their novelty, utility and nonobviousness since the defendants had conceded a 1953 prior public use for the purpose of establishing his date of priority. That prior use was not measured by evidence against the inventive concept of the patent in suit. The Judgment Order cannot be res judicata of issues which had not been concluded by the court.

An order has this day been entered vacating the Judgment Order of June 4, 1969; granting the defendants leave to file their supplemental answer and counterclaim; and plaintiff is given 20 days in which to file answer to defendants' counterclaim.