AJAX FORGE CO. v. MORDEN FROG & CROSSING WORKS.

(Circuit Court of Appeals, Seventh Circuit.   October 6, 1908.)

No. 1,433.

1. PATENTS (§ 328*)—INFRINGEMENT—SWITCH-ROD.

The Elfborg patent No. 640,456, for an adjustable switch-rod in which an eccentric is used as means for adjusting the length of the rod in a split switch, is not a pioneer patent, but the device shown differs from prior devices only in the specific locking means employed, and, in view of the narrow construction required by the prior art, the patent is not infringed by the device of the Lee and Moore patent No. 679,153.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. APPEAL AND ERROR (§ 1054*)—REVIEW—HARMLESS ERROR.

The admission in evidence in a suit in equity of a paper purporting to be an opinion given by counsel for complainant expressing doubt as to the right of recovery, even if not properly admissible, is not ground for reversal of the decree on the merits.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4185; Dec. Dig. § 1054.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 156 Fed. 591.

This appeal is from a decree on final hearing of a bill filed by the appellant for relief against alleged infringement of a patent, which dismisses the bill

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for want of equity. The patent (No. 640,456) is for an "adjustable switch-rod" for use in railroad "point rail or split switches," and describes the invention as relating "to that class of switch-rods that are designed for adjustably connecting the switch rails, so that the proper positions of the latter with reference to the permanent rails may be always assured, while at the same time provision is made for taking up wear between the parts and compensation for variations in the positions of the movable parts of the switch." It farther specifies that the switch-rods "are made in two or more parts joined through the medium of a block or plate to which one of the parts is eccentrically connected, the other of the parts being provided with an eye or socket, or equivalent bearing, in which the block or plate is fitted, so that it may be rotated for the purpose of adjusting the length of the rod."

The following Fig. 1 is exhibited in the patent as a sectional elevation of the switch-rod, and Fig. 2 as a horizontal section on line 2-2 of Fig. 1:

And the description and references in the specifications read:

"A represents the switch-rod, which is connected to each of the switch rails by the means of them. The rod is provided with an overhanging ear B, extending parallel with it and providing jaws between which projects a portion of a chair C. The portion aforesaid of the chair is provided with a circular eye or socket, in which fits, so as to be capable of rotation, an eccentric D, formed with or non-rotatively attached to a shaft E. The portion of the rod A which forms one of the jaws has an opening through which the shaft E passes, and in which it has pivotal bearing, permitting its rotary movement, the lower end of the shaft being threaded for the reception of a nut F. The ear B, forming the other jaw, is also provided with an opening through which the shaft projects, the portion of the shaft occupying this opening being of non-circular shape, preferably polygonal. The opening in the ear B is for the purpose of providing a seat or bearing for a locking-block or plate G, which has means for non-rotatively engaging the shaft, the upper portion of the shaft being threaded for the reception of a nut, H, for holding the locking-block in place."

The opinion filed in the trial court by Judge Kohlsaat (as certified in the record) recites the claims in suit and the distinctions in means on which non-infringement is found, and reads as follows:

"This is a suit to restrain alleged infringement of claims 1, 3, and 6, of letters patent No. 640,456, for adjustable switch-rod, granted January 2, 1900, to Henry G. Elfborg. The claims in suit are as follows:

" '(1) The combination with two parts to be joined, of an eccentric pivoted to one of them and fitting rotatively in an eye or socket in the other, a locking-block seated upon the part to which the eccentric is pivoted, means for non-rotatively connecting the eccentric and locking-block, and means for preventing the locking-block from moving about the pivotal axis of the eccentric, substantially as set forth.'

" '(3) The combination with two parts to be joined, of an eccentric fitting rotatively in an eye or socket in one of the parts, a shaft carrying the eccentric and having pivotal bearing in the other of the parts, a locking-block having non-rotative engagement with the shaft, and means carried by the part in which the shaft has its pivotal bearing for preventing the locking-block from moving about the axis of the shaft, substantially as set forth.'

" '(6) The combination with two parts to be joined, of an eccentric fitting rotatively in an eye or socket formed in one of them, a shaft carrying the eccentric and having pivotal bearing in the other of said parts, a locking-block having non-rotative engagement with the shaft, means carried by the part in which the shaft has its pivotal bearing for preventing the locking-block from moving about the axis of the shaft, and a handle carried by the locking-block for manipulating it, substantially as set forth.'

"A switch-rod is a member connecting and holding in alignment the movable opposite rails of a railroad switch, and the patent in suit relates to what is known, by reason of the pointed ends of its movable rails, as a 'point rail' or 'split switch.' Obviously, the simplest form of a switch-rod would be a plain rod or bar having holes for bolts or other means at each of its ends for fastening to the rails. This simple means of holding the rails in proper position is not, however, practicable for the reason that where the pointed rails contact with the continuous rails they gradually become worn and loose, thus necessitating frequent readjustment of the length of the switch-rod. Means for adjusting the rod to take up this wear has been the subject of many patents. Some have used the screw as a means of adjustment; others have used plates bolted to each end of the rod with a number of holes, each giving a new adjustment when used with the connecting bolt; while the later devices, of which the patent in suit is an example, use the eccentric as an adjusting means.

"The class of devices using the eccentric have these features in common: (1) Two principal parts of the rod to be joined; (2) a bolt, shaft, or pin passing through holes in each of the parts; (3) a disk fitted rotatively into one of the principal parts, through which passes, at some point other than its center, the axis of the coupling pin or bolt; (4) some means for locking this eccentric against rotation.

"The patents of this class differ from each other somewhat in the assembling of these parts, and this seems to be principally on account of their different means of locking the eccentric. The patent, therefore, cannot be called a pioneer patent. It follows closely the methods of the prior art in principle, differing only in the specific locking means employed.

"Defendant admits the manufacture and sale of two kinds of switch-rods which are charged to infringe the claims in suit: The first of these devices is substantially identical with that illustrated in Figs. 7, 8, and 9 of patent No. 679,153, granted to W. C. Lee and W. F. Moore on July 23, 1901, which patent is owned by defendant company. The second is a slight modification of the Lee & Moore patent No. 679,153. The difference between the two devices of defendants is admitted by both parties to be immaterial.

"The device of the patent in suit undoubtedly discloses peculiarities of construction not found in the prior art. Elfborg seems to have been the first who, by making the eccentric integral with the shaft, gave to that member the new functions of forming part of the means for adjusting the eccentric and for locking the eccentric when adjusted.

"Defendant's structure embodies these features of novelty, but goes a step further. While the shaft-head of complainant forms but a part of the means for locking the eccentric against rotation (the other part being a detachable locking-block), defendant's shaft-head is so made as to dispense entirely with the separate locking-block. Defendant has made in one part what complainant made in two, but in doing so has also changed the mode of operation. In adjusting complainant's device the nut on the shaft-head is removed, the locking-block lifted out, the shaft with its eccentric turned to the desired position, and the locking-block then replaced. In defendant's device the lower nut is removed (the upper one being integral with the shaft); the shaft must then be raised to admit of turning, and then lowered to lock the eccentric. While it. may be, as seems to be the case, that Elfborg was the first to use the eccentric integral with the shaft, yet, considered separately, this was no part of his invention. What he did invent was a combination, and there is no rule of law prohibiting defendant's use of any elements of Elfborg's combination, provided it is used in a different combination.

"To find infringement, the court must find that the enlarged octagonal shaft-head of defendant's device is the equivalent of the 'locking-block' of complainant's claims, and that the integral connection between the shaft and its head is the equivalent of the 'means for non-rotatively connecting the eccentric and locking-block' of claim 1 and the 'non-rotative engagement with the shaft' of claims 3 and 6. Under the language of claim 6, this bolt-head must also be construed as 'a handle carried by the locking-block for manipulating it.' The defendant's bolt-head corresponds to the upper octagonal part of the shaft of complainant's patent. It is simply an enlargement of this part, and the 'locking-block' shown and described by complainant, and plainly meant by him when he uses the term, is a separate locking-block. There is no such part in the defendant's device. While the integral connection between the bolt-head and its shaft of defendant's structure might be construed to be equivalent to 'means for non-rotatively connecting the eccentric and locking-block,' this could not be done without manifest abuse of the language used in claims 3 and 6, where 'non-rotative engagement with the shaft' is called for. Engagement with the shaft implies clearly the want of integrality. It would seem a forced construction to hold that the bolt-head of defendant's device is the 'handle' described and claimed by complainant. There is no such handle in defendant's device.

"Complainant contends that it does not involve invention to simply make the locking-block of its patent integral with the shaft, and complainant's expert has gone into this question fully in his testimony, and has offered in evidence an exhibit model showing the integral connection of a bolt-head made circular and locked by a narrow lateral projection which is adapted to fit into any one of a series of notches formed around the hole in which the bolt-head rests. Leaving out of consideration the handle, which is integrally connected with the bolt-head, this construction is substantially that of defendant. The mode of operation is that of defendant: The lower nut must be loosened and the whole shaft raised before it can be adjusted. This exhibit model seems to beg the question. If integral connection is made between complainant's removable locking-block and its octagonal shaft-head, without other change, the device becomes inoperative and incapable of adjustment.

"Keeping in view the state of the prior art, and giving to the claims as broad a construction as the terms used will reasonably warrant, it does not appear that defendant has infringed, and the bill will therefore be dismissed for want of equity."

Thomas F. Sheridan, George L. Wilkinson, and Walter A. Scott, . for appellant.

Dwight B. Cheever, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

PER CURIAM. The decree which is brought from this appeal is affirmed on the foregoing opinion of the trial court. Error is assigned for the conclusions there stated, of noninfringement, want of equity

in the bill, and dismissal accordingly; and each assignment is met and satisfactorily answered, as we believe, by the opinion so filed.

Complaint is further made, in the argument on behalf of the appellant, of error in receiving in evidence a paper purporting to be an opinion given by counsel for appellant (complainant) to such appellant, prior to filing the bill, expressing doubt of the infringement averred in the bill, which paper was brought out in cross-examination of the patentee, and so introduced on the part of the appellee, under a general objection that it was "not competent or pertinent to the issues," and was "merely a copy," not an original paper. The objection urged upon this appeal is that such opinion "was a privileged communication" between counsel and client, and that error appears in the ultimate refusal of the trial court, on appellant's motion, to exclude it on that ground. On the assumption, however, that the paper referred to was inadmissible upon one or the other ground, error is not assigned thereupon, as required by rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii), nor can its inception disturb the decree upon the merits of the controversy.

The decree of the Circuit Court is affirmed.