THE TEMCO MANUFACTURING COMPANY, APPELLANT, v. NATIONAL ELECTRIC TICKET REGISTER COMPANY, WILLIAM L. SULLIVAN, FRANK J. NEVINS, WILLIAM L. PEABODY, AND WALTER S. NEVINS.*—18 S. W. (2d) 142.

St. Louis Court of Appeals.   Opinion filed June 21, 1929.

*Corpus Juris-Cyc References: Equity, 21CJ, section 212, p. 212, n. 48; Injunctions, 32CJ, section 620, p. 369, n. 54; section 885, p. 506, n. 49.

*Hugh K. Wagner* for the appellant.

*Foristel, Blair, Mudd, & Habenicht* of counsel.

*Smith & Pearcy* and *Rodney Bedell* for defendants.

SUTTON, C.—This is a suit in equity for the specific performance of a contract. The suit was commenced on March 6, 1914. The contract in suit was executed on October 18, 1909. On that date defendant William L. Sullivan was employed by plaintiff in the capacity of an inventor, draftsman, and mechanic. When employed he was required to sign an employment contract, which is the contract in suit, whereby he agreed that plaintiff should have the right to all inventions relating to plaintiff's business which he should make while in the employ of plaintiff or on which he should file application for patent within three years after the cessation of his employment. While in the employ of plaintiff, Sullivan designed mechanisms which were made and sold by plaintiff, and executed patent applications for such mechanisms, and assigned them to the plaintiff. Plaintiff marketed these mechanisms through the Automatic Ticket Selling and Cash Register Company, and its predecessors and successors until October 1, 1914, when plaintiff terminated its relation with said Automatic Company. On October 19, 1911, Sullivan left the plaintiff's employ. He afterwards invented an electric motor driven ticket issuing machine, and within three years after the cessation of his employment with plaintiff, on July 29, 1912, filed application for patent thereon. This application, which is No. 712-113, resulted in the issuance of patent No. 1,308,966. In December, 1912, Sullivan

with associates organized defendant National Electric Ticket Register Company. Said defendant company undertook to manufacture the machine described in said application, but could not make it operate reliably enough to be come a commercial proposition, and hence abandoned its manufacture some time in 1913. After the failure of this machine, Sullivan invented another ticket issuing machine embodying different operating mechanisms, and filed application for patent thereon, on October 26, 1914, over three years after he left the employ of the plaintiff. This application resulted in the issuance of patent No. 1,145,818. Defendant company manufactured and sold machines following the drawings and specifications of said patent No. 1,145,818. In November, 1914, the Automatic Company, which, as stated above, no longer had the agency for plaintiff's machines, entered into a contract with the defendant company to sell its machines, and was the exclusive distributor of its machines during the years 1915, 1916, and 1917. In 1918, the relations between the defendant company and the Automatic Company were terminated, and the Automatic Company began to manufacture a ticket issuing machine in competition with the machine manufactured and sold by defendant company. In this action, the court, by its decree, rendered on April 1, 1918, ordered the assignment to plaintiff of the invention constituting the subject-matter of patent application No. 712,113. This decree was rendered upon condition, however, that plaintiff should reimburse the defendants ·for their outlays in perfecting and patenting said invention, and appointed a referee for the purpose of determining the amount of such reimbursement and the amount of damages, if any, which defendants should pay plaintiff for withholding the assignment of the invention. The court, on July 8, 1918, made a further order enjoining defendants ''from directly or indirectly making, selling, or using the subject-matter of the Sullivan application, serial No. 712,113, for United States Letters-patent.'' On July 15, 1918, the court vacated said injunction order, and in lieu thereof entered a more limited and specific order, enjoining defendants ''from, directly or indirectly, making, selling, or using the machine, the subject-matter of the Sullivan application, serial No. 712,113, for United States Letters-patent, as said application, and the specifications and drawings contained therein, now stands in United States Patent Office.'' On July 16, 1918, the day after the final injunction order was made, the defendant company sought the advice of its counsel as to whether or not the manufacture of machines under Sullivan patent No. 1,145,818 would constitute a violation of the order, whereupon counsel wrote defendant company that he had taken the matter up with the judge who made the injunction, and that the judge. had distinctly told him that the order was not meant to affect the right of defendant company to manufacture Sullivan patent No. 1,145,818, and counsel advised defendant

company that it could safely manufacture its machine under patent No. 1,145,818 without violating the injunction. Upon receiving this advice from counsel, defendant company proceeded to manufacture machines under patent No. 1,145,818, openly selling the same throughout the United States, and built up a large business, and in time erected a plant to continue the manufacture of these machines. The plaintiff was fully advised of the activities of defendant company in manufacturing and selling these machines. For more than eight years plaintiff made no protest or complaint, and took no steps to cite defendant company for contempt for violation of said injunction order, though during all this period defendant company had been openly manufacturing and selling its machines. Plaintiff ceased manufacturing any machines in the year 1916, and did no business in 1917, 1918, 1919, or 1920, and on January 1, 1921, the Secretary of State of Missouri dissolved the plaintiff as a corporation, and forfeited and cancelled its charter, for failure to comply with the statutory requirements of corporate existence. On July 24, 1924, the Automatic Ticket Register Corporation of New York paid the former secretary of the plaintiff seventy-five dollars "to be used for the purpose of reinstating the charter of the Temco Manufacturing Company forfeited to the State of Missouri." Whereupon the former vice-president of the plaintiff made application for and procured a reinstatement of its charter. On October 8, 1924, plaintiff entered into a contract with the Automatic Company granting to said Automatic Company the option to purchase on terms stated in the contract all of plaintiff's right, title, and interest in said patent No. 1,308,966, together with the right to sue and recover for past infringement, and all of its other interests and rights granted by the decree of the circuit court on April 1, 1918.

On January 10, 1927, more than eight years after the injunction order of July 15, 1918, was granted, plaintiff filed its motion for a rule on the defendants to show cause why they should not be punished for contempt of court for violation of said order. As a basis for the rule asked for in this motion, plaintiff charged the defendants with making and selling machines in substantial accord with Sullivan patent No. 1,145,818, and embodying the subject-matter of Sullivan application No. 712,113, which eventuated in the Sullivan patent No. 1,308,966. The return of the defendants admits that they manufactured and sold machines in accordance with Sullivan patent 1,145,818, alleges that the machines so manufactured and sold are constructed on a radically different principle from the machines which are the subject-matter of Sullivan application 712,113, and are different therefrom in practically all the essential features, and charges plaintiff with laches and unclean hands. On January 9, 1928, the court, by its order duly made, quashed the rule to show

cause, and discharged defendants. From this order plaintiff appeals.

Plaintiff urges here that the court below committed error in not holding, under the evidence, that the machines made and sold by defendants since the granting of the injunction on July 15, 1918, embody the machine, the subject-matter of Sullivan application 712,113, and that the manufacture and sale thereof therefore violate said injunction and constitute a contempt of court, and asks that we review the evidence and reverse the order quashing the rule to show cause and discharging defendants.

The burden of proof to establish a violation of the injunction rests on the plaintiff, and the defendants are entitled to the benefit of every reasonable doubt. Doubtful questions are not to be resolved against the defendants. The mandate of the injunction order should be so clearly expressed that when applied to the acts complained of, its violation is made to appear with reasonable certainty. [Oliver v. Orrick, 220 Mo. App. 614, 288 S. W. 966; Saal v. South Brooklyn Ry. Co., 106 N. Y. S. 996; Smith v. Halkyard, 19 Fed. 602; General Electric Co. v. McLaran, 140 Fed. 876; Schlicht v. Aeolipyle, 121 Fed. 137; Bullock v. Westinghouse, 129 Fed. 105.]

In Bullock v. Westinghouse, supra, the court announced the doctrine as follows:

"It is immaterial to consider the distinction sometimes noticed between criminal and civil contempts, inasmuch as both kinds involve the vindication of the authority of the court, whether the remedy incidentally inure to the benefit of a party or not.

"The proceeding to punish for a contempt is in its nature a criminal proceeding, whether the result be partially remediable or not, and the same rules prevail which govern in the trial of indictments, the defendant being entitled to the benefit of any reasonable doubt."

The injunction order in the present case quite definitely describes the machine which the defendants are enjoined from making, selling, or using. It is clearly the machine described in the specifications and drawings contained in Sullivan application 712,113. The claims contained in the application, of course, constitute a part of the specifications. [Robinson on Patents, secs. 481 and 504.]

Though this is not an infringement suit, and the question of infringement is not determinative of the question involved here, it may be helpful to examine some general rules announced by the courts in infringement cases.

Thus, it is said that the principle of a machine is properly defined to be its mode of operation, or that peculiar combination of devices which distinguishes it from other machines. That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used by one are therefore

the mere equivalents of those of the other. A patent for described means or mechanisms to accomplish a desired end must be limited to the particular means described in the specifications, or their clear mechanical equivalents, and does not embrace or cover any other mechanical structure which is substantially different in its construction or operation. The grant of a patent to accomplish certain specified results indicates that the patent office considered the means of accomplishing such results to be different from the means of accomplishing the same results as specified in a former patent, and raises the presumption that they are in fact substantially different. In a combination device, consisting in congeries of well-known mechanical appliances, no liberality of construction is accorded to it to create a monopoly, but it is limited to the descriptive elements in the combination as expressed in the specifications, and no great liberality of the doctrine of mechanical equivalents can be indulged in its favor. Changing the relative positions of the parts of a machine does not avert infringement, where the parts transformed perform the same respective functions after the change as before, but such changing does avert infringement where the changing of the positions of the parts so changes the functions of the parts that the machine acquires a substantially different mode of operation, even though the ultimate result remains the same. The grant of letters patent raises the presumption that the invention is not an infringement of an earlier patent. The first inventor of improvements cannot invoke the doctrine of equivalents and suppress all other improvements. An inventor who has made an improvement in a machine, and thus effects the desired result in a better or cheaper manner than before, cannot include all previous inventions and have a claim to the whole art, discovery or machine which he has improved. All others have an equal right to make improved machines, provided they do not embody the same or substantially the same devices or combination of devices which constitute the peculiar characteristic of the previous invention. [Burr v. Duryee, 68 U. S. 531; Jones v. Munger, 49 Fed. 61; Union v. Diamond, 162 Fed. 148; Portland v. Hermann, 160 Fed. 91; Simplex v. Hauser, 248 Fed. 919; Prouty v. Ruggles, 16 Pet. 336; Ajax v. Morden, 156 Fed. 591; Central v. Coughlin, 141 Fed. 91; Boyd v. Janesville, 158 U. S. 260; McClain v. Ortmayer, 141 U. S. 419; Bonsack Machine Co. v. National Cigarette Co., 64 Fed. 858.]

The inventions described in Sullivan application 712, 113 which eventuated in the issuance of patent No. 1,308,966, and in the later Sullivan application which eventuated in the issuance of Sullivan patent No. 1,145,818, are not pioneer inventions, but are mere improvements.

It is not necessary to decide whether or not the manufacture and sale by defendants of machines in accordance with patent No. 1,145,818

amounted to an infringement of the invention described in application 712,113. The question of infringement is not to be determined on motion to punish for contempt. It will be time enough to punish defendants for contempt when the court has adjudged an infringement, and enjoined the defendants from manufacturing and selling machines under patent No. 1,145,818, and defendants have violated such injunction. The rule with respect to this is announced in Bonsack v. National Cigarette Co., supra, as follows:

"This is a motion to punish for contempt. When the suit was originally brought, defendants were using a machine which the court has, after argument, held to be an infringement of complainants' patents. The defendants are now using a machine which in some respects differs from the infringing machine already passed upon, and it appears that it is made under a patent issued subsequent to the decree. The weight of authority is clearly against the proposition that in such a case the question of infringement is to be settled on a motion to punish for contempt. The new machine is brought into court with prima-facie proof that, in the opinion of the patent office, it is patentably different from the machine of complainants. Whether it is an infringement or not should be settled by application for injunction, not for commitment for contempt."

It would serve no useful purpose to describe in detail the machines involved in this proceeding. All the evidence concedes that the machine described in patent No. 1,145,818, in accordance with which defendants have manufactured and sold machines for a period of more than eight years following the entry of the injunction order, without protest from the plaintiff, differs in many respects from the machine described in application 712,113 referred to in the order. Plaintiff's expert witness admitted that thirty-nine of the forty-four claims contained in Sullivan application 712,113 do not read on the machine made and sold by defendants. As to the remaining five claims the opinion of the witness is at least fairly debatable, under the evidence. He also admitted that the elements and mechanisms described in over four hundred lines of the six hundred lines of the description of the machine in Sullivan application 712,113, and twenty-four elements of mechanisms, and numerous parts for mounting and operatively connecting these elements and mechanisms, illustrated and described in the drawings and specifications of said application. are not found in the machine manufactured by defendants.

Under this state of the evidence, we think the court below was well justified in declining to hold that the machine manufactured and sold by defendants is "the machine, the subject-matter of the Sullivan application, serial No. 712,113, for United States letters-patent, as said application, and the specifications and drawings contained therein, now stands in the United States Patent Office," referred to in the injunction order.

We are also of the opinion that this proceeding for contempt should be barred on the ground of laches. Courts of equity have always refused their aid to stale demands, where parties have slept upon their rights, and acquiesced for a great length of time. In Matheson v. Hanna-Schoellkopf, 122 Fed. 836, four years delay in moving for punishment for contempt, was held to be a bar. In the present case, as already said, there was a delay of more than eight years. During that entire period, the defendants, with the knowledge of the plaintiff, were engaged in openly manufacturing and selling the machines which the plaintiff now says amounted to a violation of the injunction order. Plaintiff not only had knowledge of this violation, if there was a violation, but the Automatic Company, which, under its contract with plaintiff, is interested in the promotion of this and other litigation in the name of the plaintiff, was a party to such violation, for said company, for a period of three years, as agent of defendants, with full knowledge of the injunction order, engaged in selling the machines the defendants manufactured. Defendants, during said period of more than eight years, expended large sums of money in building up their business in the manufacture and sale of said machines, and in the erection of a plant, and in the purchase or making of dies and equipment suitable only for the manufacture of said machines.

In Temco Manufacturing Co. v. National Electric Ticket Register Co., which was an action for infringement brought in the United States District Court for the Eastern Division of the Eastern Judicial District of Missouri, in which the plaintiff charged the defendant with the infringement of certain patents owned by plaintiff, by the manufacture and sale of the same machines involved in the present suit, Judge FARIS held the plaintiff barred by laches. In so holding, that able jurist said:

"Here, in the case at bar, as already partially disclosed, the facts are that plaintiff, with full knowledge of the alleged infringement, delayed its suit herein from at least the twenty-sixth day of October, 1914, until the seventh day of October, 1924. In the meantime, plaintiff, the owner of the patents in suits, suffered corporate death; in other words, it voluntarily relinquished its charter as a corporation. After three and a half years plaintiff was raised from the dead, and almost immediately thereafter brought this action, with the active financial assistance of the Automatic Ticket Register Corporation, and in the interim, as already said, defendant had made and sold some five thousand, or more, of the alleged infringing devices, perhaps to as many, or almost as many, different persons or concerns. During the period of complainant's death, or suspended animation, defendant expended more than fifty thousand dollars in erecting a plant and factory, and has invested large additional sums in

machinery, tools and dies useful only in making the alleged infringing structure.

". . . Here, however, defendant was making a device under a patent applied for and issued to Sullivan after the dates of the applications and issuance of the patents of defendant here in dispute, but, nevertheless, defendant had the right to rely on the presumption of validity from the fact of the grant of the patent to Sullivan, so far, at least, as to rebut the presumption, if one existed, that it knew its accused device infringed patents of whose existence defendant had knowledge. . . .

"I conclude that the defense of laches ought to be held to be a complete bar, under the peculiar facts here."

If the defense of laches bars a suit for infringement, such as that suit was, then for a stronger reason such defense bars a proceeding for contempt, such as this.

We have examined the contention of plaintiff that its delay in moving for the punishment of defendants resulted on account of its poverty, which was caused by the acts of the defendants in manufacturing and selling machines under patent No. 1,145,818, and we do not find the contention sustained either in the law or the facts of the case. Ordinarily, one who has a meritorious cause of action ought to have little difficulty in finding means to prosecute a suit therefor. "Thrice armed is he who hath his cause just." Moreover, in the present case, plaintiff was able to find the means to obtain the injunction order, which it now claims was violated by the defendants. If it is true, as the plaintiff contends, that the order enjoined defendants from manufacturing or selling machines in accordance with patent No. 1,145,818, a showing to the court of the manufacture of a single machine by defendants would have brought down upon them punishment for the contempt. Yet, plaintiff waited eight and a half years, while the defendants openly manufactured and sold throughout the United States thousands of these machines, without taking any steps whatever to bring to the attention of the court the contempt it now insists upon. We do not think the poverty of the plaintiff can excuse such delay. Moreover, plaintiff delayed moving for the punishment of defendants for two and one-half years after it was amply provided with funds by the Automatic Company. Nor do we think the evidence shows that the plaintiff's poverty was caused by the acts of the defendants, but shows rather that it resulted from plaintiff's unsuccessful attempt to manufacture and put on the market foot treadle machines which were not acceptable to the trade because not practicable.

The Commissioner recommends that the order of the circuit court, quashing its rule to show cause and discharging defendants, be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The order of the circuit court, quashing its rule to show cause and discharging defendants, is accordingly affirmed. *Becker* and *Nipper, JJ.*, concur; *Haid, P. J.*, not sitting.