REDDI–WIP, INC., a Corporation, and Development Research, Inc., a Corporation, Plaintiffs-Respondents,

v.

LEMAY VALVE COMPANY, Inc., a Corporation, Lemay Machine Company, a Corporation, and Fred Suellentrop, Sr., Defendants-Appellants,

and

Fred Suellentrop, Jr., Nuera Plastics, Inc., Western Rubber Company, and Pres-Pak Valve Corporation, Additional Defendants-Appellants.

Nos. 30562, 30563, 30637.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1962.

Motion for Rehearing or for Transfer to Supreme Court Denied and Opinion Modified April 2, 1962.

---

914

Lusser, Morris & Burns, Rene J. Lusser, St. Louis, George J. Mager, Clayton, for defendants-appellants.

Hocker, Goodwin & MacGreevy, Lon Hocker, St. Louis, Jerome A. Gross, St. Louis, for respondents.

DOERNER, Commissioner.

Plaintiffs brought this action in equity seeking an injunction to restrain the defendants from making, using or selling certain dispensing valves, for an accounting, and for other relief. On April 30, 1958, the court entered an interlocutory decree by which the defendants were enjoined, an accounting was ordered, and a Special Master appointed to take the same. On November 12, 1959, plaintiffs waived the accounting, and the interlocutory decree became a final judgment from which the defendants appealed. While the interlocutory decree was still in effect plaintiffs, on September 25, 1959, filed a motion alleging that the defendants and the additional defendants had violated it by manufacturing and selling such valves, and asking that they be cited for contempt. A hearing was held on November 12, 1959, and on February 24, 1960, the court entered its order finding the defendants and the additional defendants guilty of contempt, and assessing fines against them in varying amounts. After unavailing after-trial motions, the defendants and additional defendants duly appealed. By agreement of all parties the appeals were consolidated for briefing and argument.

The valves which are the subject of this litigation are those frequently found in pressurized containers of fluffed products, such as whipped cream and shaving cream, the contents being dispensed when the tube or stem is tilted sideways. The idea for such a valve originated with Aaron S. Lapin as early as 1942. In 1947, Lapin, assisted first by an engineer named Tomasek, and subsequently by defendant Fred Suellentrop, Sr., the president and owner of defendant Lemay Machine Co., began the development of what will be referred to as the Tomasek valve, the first of which was satisfactorily assembled about February 1948. The component parts of the Tomasek valve consisted of a container top or mounting cap; a tubular, tiltable stem, having a valve head at the lower end; a rubber grommet or seal; and a metal spring designed to restore the stem to an upright position when the sideways pressure applied to tilt it was removed. An application for a patent was applied for in Tomasek's name on September 27, 1948, all interest in the invention was assigned to plaintiff Reddi-Wip, Inc., a corporation formed by Lapin and his associates, and that company became and is the owner of the patent on the Tomasek valve, No. 2,615,597, which was issued on October 28, 1952.

Following the successful development of the Tomasek valve, Lemay Machine, and subsequently a new corporation formed by Suellentrop for the purpose, St. Louis Valve Company, Inc., received orders for such valves from Reddi-Wip, purchased the component parts from suppliers, assembled the valves, and sold them to Reddi-Wip. This relationship continued until Reddi-Wip decided to set up its own assembly plant, and to employ St. Louis Valve to supervise and manage the same, subject to its direction and control. To that end a written contract was entered into between the parties on July 11, 1949, the pertinent terms of which will be later discussed.

Prior to the execution of that contract Lapin had been working on the development of a springless valve in which the rubber grommet was designed to serve both as a seal and as the spring to restore the stem to an upright position. An application for this valve, hereafter called the Lapin valve, was filed by Lapin on May 2, 1949, assigned to Reddi-Wip, and ultimately resulted in the issuance to it on March 15, 1955, of Patent No. 2,704,172. During the same period in which Lapin was developing the Lapin valve, Suellentrop, unknown to Lapin, was also developing a springless valve, which will be referred to as the Suellentrop valve, for which he applied for a patent on June 30, 1949. In the course of the negotiations for the employment contract of July 11, 1949, Lapin learned from Suellentrop that the latter had applied for a patent on his valve, and there was incorporated in that

agreement a provision requiring Suellentrop to assign his invention to Reddi-Wip. Suellentrop did so, by an assignment dated July 27, 1949. Suellentrop's application was not pressed, and no patent was ever issued thereon.

In accordance with the contract of July 11, 1949, St. Louis Valve supervised and managed the assembling of Tomasek valves for Reddi-Wip and its licensee, plaintiff Development Research, Inc., until June 28, 1951. On that date the parties executed a written agreement modifying the contract, by which Reddi-Wip dispensed with the supervisory and management services of St. Louis Valve, but agreed to pay the latter the original minimum compensation of $2,-000 per month until July 11, 1954, the expiration date of the original contract. The evidence is clear that after June 28, 1951, none of the defendants herein, or St. Louis Valve, acted in a supervisory or managerial capacity for plaintiffs. In fact, the only relationship shown was that until December 1956, Lemay Machine on occasions made repairs to machinery and equipment used by Development Research in the assembling of Tomasek valves, and sold the latter various supplies.

On July 2, 1956, Suellentrop filed an application for a patent on a springless type valve. On December 12, 1956, he filed another application on the same type, both of which applications were pending at the time the trial was held. Suellentrop then formed the defendant corporation Lemay Valve Company, Inc., of which he owns all of the shares, and in May 1957 began in a small way to manufacture and sell the so-called Lemay valve, which was covered by his application of December 12, 1956. Plaintiffs instituted this action on June 28, 1957. Between May 1957 and the date of trial, February 27, 1958, Lemay Valve Co. assembled approximately a half million of the Lemay valve. Jack W. Soffer, president of Development Research, testified that his company continued to assemble and sell an improved spring-type or Tomasek valve until

the trial, at the rate of several million a month, that it was not yet in commercialized production of the springless or Lapin valve, and that up to the week preceding the trial the entire production of the Lapin valve only amounted to about 200,000 valves.

Plaintiffs' petition was in two counts, on both of which the court found in favor of plaintiffs. The essential allegations of the cause of action pleaded in Count I was that a confidential relationship had existed between the plaintiffs and defendants, in the course of which defendants had acquired knowledge of plaintiffs' trade secrets relating to its dispensing valves; and that in violation of the obligations imposed on them by virtue of such confidential relationship, defendants were unfairly competing with plaintiffs by utilizing plaintiffs' trade secrets in the manufacture and sale of defendants' valves. In the prayer plaintiffs asked that defendants be enjoined " * * * from making, using or selling the particular valves now being manufactured, used and sold, or any other valve embodying any of the details of construction or any of the trade secrets utilized in Plaintiffs' valves," for an accounting of profits and award of damages, and other relief. Defendants denied generally the material allegations in Count I of plaintiffs' petition.

The court found that a confidential relationship had existed between plaintiffs and defendant Suellentrop, and declared the law to be that: " * * * By the confidential relationship existing between plaintiffs and defendant Suellentrop and Lemay Valve Company, Inc., during 1948 and 1949, defendants are precluded from utilizing, for their own benefit and in competition with the plaintiffs, any of the information disclosed to them pursuant to said confidential relationship, particularly the principles underlying the valve structure of the valve disclosed to and manufactured by Lemay Machine Co. for Reddi-Wip in 1948 and 1949, and including the springless modifica-

tion thereto developed in the spring of 1949." (While of no great consequence, it is apparent that in speaking of the confidential relationship which existed between plaintiffs and defendant Lemay Valve Co. during 1948 and 1949 the court undoubtedly intended to refer to either the Lemay Machine Company or the St. Louis Valve Company rather than to the Lemay Valve Company, for the evidence is undisputed that the latter company was not incorporated until February 20, 1957). By the interlocutory decree the defendants were enjoined permanently from directly or indirectly manufacturing, selling or using a valve for pressure containers "Embodying, in whole or in part, the same or substantially the same, device or combination of devices, or any of them, as those disclosed * * *" in the Tomasek valve, the Lapin valve, and the Suellentrop valve, an accounting was ordered, and a Special Master appointed to take the same.

The basis of the cause of action pleaded in Count I is the rule that one who uses another's trade secret, without a privilege to do so, is liable to the other if his use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. Restatement, Torts, Sec. 757; Callmann on Unfair Competition and Trade Marks, Vol. 2, Sec. 51; Ellis on Trade Secrets, Sec. 1. This general rule has long been recognized and followed in Missouri. Luckett v. Orange Julep Co., 271 Mo. 289, 196 S.W. 740; Godefroy Mfg. Co. v. Lady Lennox Co., Mo.App., 134 S.W.2d 140; Germo Mfg. Co. v. Combs, 287 Mo. 273, 229 S.W. 1072, 209 Mo.App. 651, 240 S.W. 872. In one of the cases cited by plaintiffs, Smith v. Dravo Corp., 7 Cir., 203 F.2d 369, 373, it is said that the essential elements of such a cause of action are: (1) the existence of a trade secret, (2) communicated to the defendant, (3) while he was in a position of trust and confidence, and (4) use by the defendant to the injury of the plaintiff. The term "trade secret" is defined in the Restatement, Torts, Sec. 757, Comment b, as "* * * any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. * * *" While the courts sometime refer to the rights of "property" which a discoverer has in his trade secrets, Godefroy Mfg. Co. v. Lady Lennox Co., supra (a term which Mr. Justice Holmes called "* * * an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. * * *" E. I. DuPont de Nemours Powder Co. v. Masland, 244 U.S. 100, 102, 37 S.Ct. 575, 61 L.Ed. 1016) the rationale for the imposition of liability is the users "* * * employment of improper means to procure the trade secret, rather than the mere copying or use. * * *" Restatement, Torts, Sec. 757, Comment a.

Inasmuch as the first essential element of such a cause of action is the existence of a trade secret, the courts have generally held that a disclosure of the trade secret, by legitimate discovery by a competitor or voluntarily by the original discoverer, will defeat liability. For an instance in which liability was denied because of legitimate discovery on the part of a competitor see Godefroy Mfg. Co. v. Lady Lennox Co., supra. The discoverer may voluntarily disclose his trade secrets by offering his product for sale, for as said in the Restatement, Torts, Sec. 757, Comment b: "* * * Matters which are completely disclosed by the goods which one markets cannot be his secret. * * *" And while an application to patent a discovery is not of itself a general disclosure, and hence a release of the obligation of a confidential disclosee, Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661, it was said in that case that "* * * If a discovery is one which constitutes invention and for which a patent is issued, the right of further secrecy is, of course, lost, for a legal disclosure and public dedication have then been made, with a right of limited and temporary monopoly granted as the reward. See Grant

v. Raymond, 31 U.S. 218, 242, 6 Pet. 218, 8 L.Ed. 376; Shaw v. Cooper, 32 U.S. 292, 320, 7 Pet. 292, 8 L.Ed. 689; Gayler v. Wilder, 51 U.S. 477, 10 How. 477, 497, 13 L.Ed. 504."

In the instant case, while the court in its declaration of law referred to the confidential relationship which existed between plaintiffs and defendant Suellentrop and his company "during 1948 and 1949," we are inclined to the view that such relationship continued during the time the defendants were actively engaged in a supervisory and managerial capacity under the contract of July 11, 1949, and perhaps to the termination of that contract on July 11, 1954. However, in any event it appears from plaintiffs' own evidence that the patent which had been applied for on the Tomasek valve was granted on October 28, 1952, and on the Lapin valve on March 15, 1955. The evidence further showed, and the court also found, that Sullentrop did not begin the development of the Lemay valve until 1956, and that Lemay Valve Co. did not start to manufacture and sell the Lemay valve until May 1957. Not only had all confidential relationship between plaintiffs and defendants long since ceased by the latter date, but whatever trade secrets may have been revealed to the defendants during the time that relationship existed had long since been fully disclosed by plaintiffs by the issuance to them of the patents on the Tomasek and Lapin valves.

■ Plaintiffs cite a line of cases holding that one who has learned the discoverer's trade secrets while acting in a confidential capacity will be denied the right to avail himself of such information even though the discoverer has revealed such secrets to the world. See Smith v. Dravo Corp., 7 Cir., 203 F.2d 369; Franke v. Wiltschek, 2 Cir., 209 F.2d 493; A. O. Smith Corp. v. Petroleum Iron Works Co. of Ohio, 6 Cir., 74 F.2d 934. In some of such cases, as in Smith v. Dravo, supra, there was present an element of improper means or bad faith by the defendant, a factor totally lacking in the instant case. In general, the doctrine

upon which that line of cases rests was declared by Judge Learned Hand as one for which " * * * we can find no support in principle. * * *" Conmar Products Corp. v. Universal Slide Fastener Co., 2 Cir., 172 F.2d 150, 156. We are of the opinion that the rule applied in Smith v. Dravo, supra, is not applicable to a case where, as here, defendants' knowledge of plaintiffs' trade secrets was acquired during a normal, albeit confidential relationship, which has long since ceased, and the use of the alleged trade secrets occurred a substantial length of time after their voluntary disclosure by the issuance of patents to plaintiffs. See Ellis Trade Secrets, Sec. 161; Sandlin v. Johnson, 8 Cir., 141 F.2d 660; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632; Pennington Engineering Co. v. Houde Engineering Corp., 2 Cir., 136 F.2d 210. For the reasons stated, plaintiffs were therefore not entitled to relief under Count I of their petition.

The essential allegations in Count II of plaintiffs' petition are that Reddi-Wip developed a "springless valve" for dispensing fluffed or whipped products; that "On or about July 27, 1949, for good and valuable consideration, Defendants Fred Suellentrop, Sr. and Lemay Machine Co. transferred and assigned to Reddi-Wip, Inc. all their interests in and to the said springless valve and in and to any improvements thereon, pursuant to a contract dated July 11, 1949, by which defendants agreed not to manufacture, assemble or sell said springless valve"; and that the defendants were manufacturing, using and selling valves " * * * embodying the features * * *" of said springless valve, in violation of said assignment and said contract. The prayer was for the same relief as that asked in Count I. Defendants' answers consisted, in effect, of general denials.

■ Although they did not raise the point below, defendants now claim on appeal that the court was without jurisdiction because plaintiffs' cause of action in Count II constituted a complaint of patent in-

fringement, the jurisdiction over which is exclusively vested in the United States District Court. Having raised that vital issue, which if correct would be decisive of our jurisdiction, defendants content themselves with a reference to the applicable Federal statute 28 U.S.C.A. § 1338, but do not cite a single authority in support of their proposition. The cases dealing with the subject are numerous, many of them are difficult to reconcile, and in some situations the question may not admit of an easy answer. See Walker on Patents, Deller's Ed., Vol. 3, Sec. 411–414. The test laid down in one of the leading and oft-cited cases on the problem, Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458, is that to constitute an action arising under the patent laws of the United States the plaintiff in his petition must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction, of those laws. Plaintiffs' petition does not meet this test. They do not allege therein, directly or indirectly, that defendants are infringing their patents. In fact, there is not the slightest reference in Count II of their petition (or, for that matter, in Count I) to the patents held by plaintiff Reddi-Wip on the Tomasek and Lapin valves. Had plaintiffs alleged in substance in Count II that defendants were infringing their patents by making and selling the Lemay valve there would be merit to defendants' contention that the court did not have jurisdiction, even though the construction of Suellentrop's assignment and the contract of July 11, 1949, might also have been involved. Littlefield v. Perry, 21 Wall. 205, 22 L.Ed. 577. But for the purposes of their action under Count II plaintiffs chose to treat the Tomasek and Lapin valves as unpatented products. The basis of their claim is breach of contract, not patent infringement, and the court had jurisdiction.

As to that part of their cause of action under Count II based on Suellentrop's assignment of the Suellentrop valve, plaintiffs' theory is that although the assignment contained no express clause prohibiting Suellentrop from making and selling Suellentrop valves, there was implicit in it an implied agreement on his part not to do so. The rule contended for may be the law, although the only case cited by plaintiffs, Temco Mfg. Co. v. National Electric Ticket Register Co., 223 Mo.App. 420, 18 S.W.2d 142, does not support their contention. Assuming, however, that the rule is as stated by plaintiffs, the implied agreement would be one in restraint of trade, to be strictly construed, and Suellentrop would thereby be prohibited from making only the same valve disclosed in his application. The evidence showed that while the Lemay valve consists of the same component parts as the Suellentrop valve there are marked structural and functional differences between them. Structurally, neither the stem nor the grommet of one is interchangeable with the other. The valve head on the stem of the Suellentrop valve is flat, as is the grommet, and the seal is thus formed by two flat surfaces being pressed together. In the Lemay valve the valve head is tapered or conical in shape, as is the grommet, so that the valve head is pressed into the grommet in the same way that a tapered peg is pressed into a hole. In the Suellentrop valve the flow communication spaces to the parts in the stem are molded into the grommet. In the Lemay valve, the flow communication spaces are molded partly into the grommet and partly into the stem. The most marked difference between the two valves, however, is functional, or in the manner in which the sealing result is obtained. In the Suellentrop valve the gas pressure within the container is depended upon to force the valve head against the rubber grommet to achieve the seal. In the Lemay valve the sealing action is not dependent upon the gas pressure, but is achieved by compressing the rubber grommet in the process of assembling the valve, which pre-stressing holds the valve head tightly against the grommet. Thus structurally and functionally the Lemay valve differs from the Suellentrop valve.

Plaintiffs pleaded in Count II that by the assignment Suellentrop had assigned not only his interest in the Suellentrop valve, but also his interest "* * * in and to any improvements thereon * *." The assignment did not contain such a provision, and all that Suellentrop assigned was the invention "* * * as the same is disclosed in said application * * *." The law is clear that an assignment of a specified invention does not by implication include a promise to transfer future inventions covering improvements thereon, nor any competing invention. Williston on Contracts, Rev.Ed., Sec. 1643A, pp. 4614, 4615. Ellis on Patent Assignments, Sec. 126; Monsanto Chemical Works v. Jaeger, D.C., W.D.Penn., 31 F.2d 188, affirmed and opinion adopted, 3 Cir., 42 F.2d 1018; Lamson v. Martin, 159 Mass. 557, 35 N.E. 78; General Time Corp. v. Padua Alarm Systems, 2 Cir., 199 F.2d 351; Eastman Kodak Co. v. MacLeester, 3 Cir., 75 F.2d 825. It follows that by making and selling the Lemay valves the defendants did not breach an implied contract prohibiting them from manufacturing and selling the Suellentrop valve, and that the assignment furnished no basis of relief under Count II.

Plaintiffs' second string to their bow under Count II is that by making and selling the Lemay valve defendants Suellentrop and Lemay Machine breached clause (b) of paragraph 13 of their contract of July 11, 1949, which reads:

"13. In consideration of this agreement, Second Parties agree jointly, individually and severally, as follows:

"(a) That they recognize the validity of the patents or pending patents of the Reddi-Wip valve, and such other valves as from time to time shall be furnished to the Valve Company by Reddi-Wip, Inc., for assembly.

"(b) That they will not manufacture, sell or assemble directly, or indirectly, Reddi-Wip valves for any competitor of Reddi-Wip, Inc., nor any

other valve for use in pressure container food packages during the life of this agreement."

It was plaintiffs' position below that the Suellentrop valve was substantially the same as both the Lapin valve and an improvement thereof called the Development Research valve. What we have said regarding the structural and functional differences between the Lemay valve and the Suellentrop valve is therefore equally applicable to the Lapin and Development Research valves. But in any event we cannot accept the construction of clause (b) placed on it by plaintiffs and adopted by the court. Plaintiffs contend that the final, relative phrase of clause (b), "during the life of this agreement," modifies only the immediate antecedent clause, and that by the first antecedent clause there was no limitation of time within which defendants were prohibited from manufacturing Reddi-Wip valves. Defendants argue, conversely, that the relative clause modified both antecedent clauses, and that the prohibition was to extend only during the life of the contract, which was five years.

In support of their contention plaintiffs refer to the "last antecedent" rule, discussed in Isaac T. Cook Co. v. Bank of St. Louis, Mo.App., 297 S.W.2d 607, 610, but as was there pointed out, that rule is merely an aid to construction and will not be adhered to where a remote antecedent is clearly intended. In order to ascertain the intention of the parties as of the time they executed the contract consideration must be given not only to the language and grammatical construction of the provision in dispute, but also to the subject matter of the contract and the circumstances which surround its execution. Ruysser v. Smith, Mo., 293 S.W.2d 930; Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S.W. 1131. Primarily, the agreement was a contract of employment, by which Reddi-Wip employed St. Louis Valve "* * * to supervise the assembly of Reddi-Wip valves at Reddi-Wip Assembly Plant #1 * * *" under

"* * * the direction and control of Reddi-Wip, Inc. * * *" In fact, basically it was a contract for the employment of Suellentrop, for the contract required that Suellentrop act as the general supervisor of St. Louis Valve and gave Reddi-Wip the option to terminate the contract if he ceased to serve in that capacity. At the time the contract was executed no patents had been granted Reddi-Wip on its valves, and though application therefor had been made, there was no assurance when, if ever, they would be issued. Any competitor, including Suellentrop and St. Louis Valve, was therefore free to manufacture or sell Reddi-Wip valves, subject only to a suit for infringement if (but only if) such patents were ultimately issued. Walker on Patents, Deller's Ed., Vol. 3, Sec. 450, p. 1682; Gayler v. Wilder, 51 U.S. 477, 10 How. 477, 13 L.Ed. 504. If the purpose of clause (b) had been to prevent the defendants from forever making Reddi-Wip valves there would have been no reason to have added the words "for any competitor of Reddi-Wip, Inc." We think the intention of the parties was not to forever prohibit the defendants from competing with Reddi-Wip, but to restrain them from making dispensing valves, Reddi-Wip or any other kind, for competitors of Reddi-Wip during the term of the contract.

■ Furthermore, in the light of plaintiffs' petition, to construe clause (b) as contended for by plaintiffs would render that provision unenforceable, and probably illegal. As pointed out, this is not an action for infringement, but one to enjoin the breach of a contract restricting the manufacture of an unpatented article. As such it is a bargain in restraint of trade, Restatement, Contracts, Sec. 513, for it is a restriction on defendants' right to compete with Reddi-Wip, including their right to copy and sell valves similar to its, so long as defendants do not palm off their valves as those of plaintiffs. Restatement, Torts, Sec. 757, Comment (a). If the agreement not to compete is not qualified as to time, as plaintiffs contend, then it is unreasonable

and unenforceable. Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388, 69 S.W. 355, affirming 83 Mo.App. 6; Prentice v. Rowe, Mo.App., 324 S.W.2d 457; Renwood Food Products v. Schaefer, 240 Mo. App. 939, 223 S.W.2d 144. It would likewise appear to conflict with our statute on agreements in restraint of trade, Section 416.040, RSMo 1949, V.A.M.S. See Temperato v. Horstman, Mo., 321 S.W.2d 657.

■■ The final question on appeal is whether the court erred in adjudging the defendants and the additional defendants guilty of contempt. During the course of the hearing, presided over by a judge other than the one who had heard the case on its merits, defendants sought to introduce in evidence letters patent No. 2,852,168 which had been issued to Suellentrop on the Lemay valve on September 16, 1958, after the rendition of the interlocutory decree. The court sustained plaintiffs' objections to their admission, and found the defendants and additional defendants guilty of contempt. We have reached the conclusion that the court erred in refusing to admit defendants' letters patent in evidence, and in holding that the defendants and additional defendants violated the decree. As pointed out by plaintiffs on another point in their brief, the decree in the instant case is similar to that involved in Temco Mfg. Co. v. National Electric Ticket Register Co., 223 Mo.App. 420, 18 S.W.2d 142, and, we may add, the essential facts are likewise similar. Regarding the effect of a patent it was there said (18 S.W.2d 142, 1. c. 145):

"* * * The grant of a patent to accomplish certain specified results indicates that the patent office considered the means of accomplishing such results to be different from the means of accomplishing the same results as specified in a former patent, and raises the presumption that they are in fact substantially different. * * *"

Inasmuch as the defendants' evidence in the hearing on contempt showed that let-

ters patent had been issued on the Lemay valve, the issue was then squarely presented whether the Lemay valve infringed on the Lapin valve or the Tomasek valve. Not only does that issue belong in another forum, as we have pointed out, but as stated in the Temco case, 18 S.W.2d 145: "* * * The question of infringement is not to be determined on motion to punish for contempt. * * *"

For the reasons stated, the judgment and decree, as well as the order adjudging defendants and additional defendants guilty of contempt, should be reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment and decree and order adjudging defendants and additional defendants guilty of contempt is reversed.

ANDERSON, P. J., and WOLFE and RUDDY, JJ., concur.