Albert M. GALLO d/b/a A. J. Gallo Company, Plaintiff,

v.

**NORRIS DISPENSERS, INC., Defendant.**

No. 68 C 154(2).

United States District Court, E. D. Missouri, E. D.

June 10, 1970.

Paul M. Denk, St. Louis, Mo., for plaintiff.

Edward T. Foote, Bryan, Cave, Mc-Pheeters & McRoberts, St. Louis, Mo., and Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for defendant.

MEMORANDUM

MEREDITH, District Judge.

The plaintiff, Albert M. Gallo, is a citizen of the State of California, registered to do business in the State of California under the fictitious name A. J. Gallo Company. The defendant, Norris Dispensers, Inc., is a corporation, duly organized and existing under the laws of the State of Minnesota, doing business in Missouri. The acts about which plaintiff complains occurred in the Eastern District of Missouri.

Count I of the complaint charges infringement by defendant of the patent in suit, No. 2,746,262, which was issued to A. M. Gallo, for an ice-making machine, on May 22, 1956. The second

count charges unfair competition and the exercise of unlawful business acts and practices.

This Court has jurisdiction under 28 U.S.C. § 1338(a) and (b).

Defendant, in its answer, alleges that the patent is invalid and void; that the ice machine manufactured by Norris Dispensers, Inc., does not infringe plaintiff's patent. Defendant denies that it is guilty of any unfair competition or unfair business practices. Defendant, in its counterclaim, asks the Court to declare the patent in suit invalid and void.

Defendant Norris is accused of infringing claims 10, 15, 16, and 17, of the Gallo patent. These claims read as follows:

"10. An ice making machine comprising, in combination: an insulated housing; a refrigerating apparatus for said housing; a plate member disposed in the upper region of said housing at an inclination with respect to the vertical; evaporator coils for said refrigerating apparatus distributed adjacent the top side of said plate member, the underside of said plate defining an ice forming surface; a water reservoir positioned adjacent the lower edge of said plate; filter means between said lower edge and said reservoir; a water overflow trough adjacent the upper edge of said plate and including a curved lip portion merging into said ice forming surface; a pump for moving water from said reservoir into said overflow trough, whereby a film of water runs down said ice forming surface and builds up into a slab of ice, excess water passing through said filter to said reservoir; means for removing said slab of ice after a predetermined quantity has formed; means positioned beneath said plate member for receiving and breaking up said slab of ice; and a storage bin defined by the lower region of said housing for collecting said broken ice."

"15. An ice making machine according to claim 10, including means responsive to the quantity of ice in said storage bin for shutting off said refrigerating apparatus."

"16. An ice making machine according to claim 10, in which said means positioned beneath said plate member for receiving and breaking up said slab of ice comprises a grid of two groups of parallel wires at substantially right angles to each other, and means for heating said wires, whereby ice cubes are formed from said slab of ice."

"17. An ice making machine according to claim 10, in which said means positioned beneath said plate member for receiving and breaking up said slab of ice comprises an inclined tray, and comminuting means adjacent the lower edge of said tray, whereby said slab is gravity fed into said comminuting means and broken up into small chips."

■ This patent was issued in a field of art which is a crowded field. It is a combination of elements, all of which are old, and the question to be determined by the Court is whether or not this patent meets the tests for validity as set out in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In the opinion of the Court, this patent, while being useful, is not new, and at the time the invention was made the subject matter as a whole was obvious to a person having ordinary skill in the art to which the subject matter pertains. Claims 10, 15, 16, and 17 of the patent are representative of the entire patent. The Court holds the patent is invalid.

Claim 10 of the patent was granted without change. Claims 15, 16, and 17 are dependent upon claim 10. The examiner, in rejecting claim No. 7, cited Taylor, patent No. 2,063,770, 1936; Kleucker, patent No. 2,288,003, 1942; and Muffly, patent No. 2,596,274, 1952, and patent No. 2,656,689, 1953, as examples of the proposition that flowing water down the underside of a freezing surface is old in the art. This is one of the key points which Gallo contends is

new and different in his combination patent under claim 10. Claims 7 and 8 were amended to incline the freezing plate at an angle of less than forty-five degrees to the horizontal to distinguish it from Kleucker, and in defining the overflow trough and spill lip construction used to produce the thin film of water of uniform thickness on the underside of the freezing plate. Gallo, in his testimony, attributes great weight to the overflow trough and the spill lip construction on which the water flows to the underside of the freezing surface as being new and unobvious combinations.

The Murdock patent, No. 2,730,865, was filed on February 26, 1952, prior to Gallo. It was not cited by the Patent Office. Murdock shows freezing water on the underside of a plate. It shows a perforated water distribution system which flows water around a curved lip. It shows a conveyor to catch the ice slab after the slab is released from the plate by hot gases introduced in the coils and a reservoir to catch excess water. It shows a cut-off valve which operates to introduce hot gases into the freezing plate causing the ice slab to drop, and an insulated house. In combination this patent is not much different than the Gallo patent in suit.

The Albright patent, No. 2,683,357, was filed on October 26, 1951. It was not cited. It shows freezing on a vertical surface after water flows over a curved lip. This patent shows an ice storage bin.

The Short patent, No. 2,310,468, was issued February 9, 1943. It was not cited. It shows distributing water from the bottom of a reservoir onto a curved lip and down a vertical freezing surface.

The Taylor patent, No. 2,063,770, shows distributing water on curved freezing surfaces.

Both Ophuls, No. 1,370,221, and Barrath, No. 795,753, show the use of overflow troughs to flow water on freezing plates. Neither patent was cited in Gallo. Barrath also shows increasing freezing capacity by using more plates.

The Baker patent, No. 2,784,563, and Ayres, No. 2,995,905, both show means for shutting off the refrigeration apparatus when sufficient ice is in the storage bin, as called for in Gallo claim 15. They also show an electrical wire grid for receiving the slab of ice and forming cubes as shown in Gallo claim 16. Neither of these patents were cited. These patents also show a means to shut off the refrigerating apparatus when a quantity of ice is formed on the freezing plate.

The Leeson patent, No. 2,645,910, shows a means for sliding a slab of ice onto a tray and feeding it into a means to break it into small chips as called for in Gallo claim 17. This patent was not cited. The same principle is shown in Murdock No. 2,730,865.

The Magnuson patent, No. 2,674,858, and Mason, No. 2,723,536, both show the principle of forming ice without impurities and free of foreign matter on the underside of a freezing plate. Neither were cited in Gallo.

The usual presumption of patentability is given little weight when the Patent Office fails to cite prior art which is pertinent. See Howe v. General Motors Corp., 401 F.2d 73 (7th Cir. 1968); L. S. Donaldson Co. v. La Maur, Inc., 299 F.2d 412 (8th Cir. 1962); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977 (8th Cir. 1966).

■ Even if the Gallo patent were valid, the machine of the defendant does not infringe. Since the Gallo patent is a combination of old elements, each of the elements must be included to constitute infringement. Morpul, Inc. v. Glen Raven Knitting Mill, Inc., 357 F.2d 732 (4th Cir. 1966). The defendant machine has a trough with holes in the bottom from which the water flows onto the curved lip surface. The Gallo machine has a trough from which the water overflows to the curved lip surface. The ice-forming cycle of defendant's machines is regulated by a clock and not by thermal elements which respond to the thickness of the ice.

■ Since the Gallo patent is invalid, there can be no infringement. Graham v. John Deere Co., supra; American Infra-Red Radiant Co. v. Lambert Industries, Inc., supra; and Ditto, Inc. v. Minnesota Mining & Mfg. Co., 336 F.2d 67 (8th Cir. 1964).

Count II of the complaint relates to the wrongful use by defendant of trade secrets of the plaintiff. The background of the controversy is that Louis Weiss of St. Louis, Missouri, owned Ideal Cooler Company, which was in the business of making refrigerated beverage-coolers. During the 1950's he decided to go into the business of manufacturing ice-making machines. In the investigation of a number of machines, in November 1959, Michael Weiss, a nephew of Louis Weiss, went to California and talked to Gallo. Gallo's machines were in use at several restaurants. Thereafter, a machine was sold by Gallo to Weisco Products Corporation, a newly-formed Missouri corporation. In January 1960, a license agreement was forwarded to Gallo for an exclusive license, which Gallo rejected, since he wanted to grant only a nonexclusive license. In February 1960, the machine was shipped back to Gallo. While Michael Weiss was in California, Gallo also gave him certain drawings of the Gallo machine. The machine shipped by Gallo was a used, repossessed machine. The Gallo machine was examined in St. Louis at the plant of Ideal Cooler Company by some of the personnel under the direction of Louis Weiss. The Gallo patent had been issued on May 22, 1956, over three years before Michael Weiss was in California. The machines of Gallo had been manufactured and sold from 1957 on. There is no substantial evidence that Gallo even warned Michael Weiss of any trade secrets involved in his machine. The machines were for sale and had been sold to the general public long before the California trip in November 1959. In May 1964, Gallo saw the machines of Weisco Products Corporation, which, by that time, was owned by a wholly-owned subsidiary of defendant through the purchase of Weisco's stock. Later, the subsidiary of defendant was dissolved and the assets became owned by defendant in June 1966. In February 1967, Weisco was dissolved and its assets became owned by defendant. Weisco Products and its successors made the machines which plaintiff contends infringe his invention and wrongfully use his trade secrets. Defendant went out of the ice-making machine business in 1966 or 1967 and had no knowledge of any of the negotiations between Weiss and Gallo.

The law of Missouri relating to trade secrets is set out in Reddi-Wip, Inc. v. Lemay Valve Company, 354 S.W.2d 913 (St.L.C.A.1962). First of all, there must be a trade secret. The Court at 917:

> "The discoverer may voluntarily disclose his trade secrets by offering his product for sale, for as said in the Restatement, Torts, Sec. 757, Comment b: '* * * Matters which are completely disclosed by the goods which one markets cannot be his secret. * * *' And while an application to patent a discovery is not of itself a general disclosure, and hence a release of the obligation of a confidential disclosee, Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661, it was said in that case that '* * * If a discovery is one which constitutes invention and for which a patent is issued, the right of further secrecy is, of course, lost, for a legal disclosure and public dedication have then been made, with a right of limited and temporary monopoly granted as the reward. * * *'"

See also National Rejectors, Inc. v. Trieman, 409 S.W.2d 1 (Mo.Sup.1966).

■■ In the instant case, there were no trade secrets involved. If there had been any trade secrets originally, Gallo would have lost them by selling his product and by obtaining a patent. There was no agreement between Gallo and the Weiss' and no warning given to Michael Weiss about trade secrets. The so-called trade secrets of Gallo, which the Weiss'

**42**

obtained, were not communicated to defendant, who had no knowledge of the background of the ice machine, and Weiss did obtain a patent on his machine on March 2, 1965, No. 3,171,266. No action under the trade secret law will lie against defendant Norris.

Since the Court has already held the patent was invalid, a judgment will be entered for defendant on both Counts I and II and a judgment will be granted to defendant on its counterclaim that the Gallo patent is invalid.